# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2327

_____

Joe D. Ratliff,                                       *
                                                      *
      Appellant,                            *
                                                      *    Appeal from the United States
    v.                                      *    District Court for the Eastern
                                                      *    District of Arkansas.
Jefferson Pilot Financial Insurance                   *
Company[1]                                             *
                                                      *
                                                      *
      Appellee.                             *


_____

Submitted:  December 14, 2006
Filed:  July 6, 2007

_____

Before WOLLMAN, RILEY and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

_____

[1]Appellant's employer provided disability benefits through Guarantee Life Insurance Company which was merged into Jefferson Pilot Financial Insurance Company ("Jefferson Pilot") in 2000.  The district court improperly identified Guarantee Life Insurance Company as defendant in the style of this case, an error which we now correct.

Appellant, Joe D. Ratliff, appeals the district court's[2] judgment denying and dismissing his complaint against Jefferson Pilot Financial Insurance Company ("Jefferson Pilot") filed pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1132(a)(1)(B). We affirm.

I.

Ratliff was a partner in the accounting firm of Baird, Kurtz and Dopson, LLP ("BKD"). In 1990, Ratliff was diagnosed with coronary artery disease. In March of 2001, Ratliff developed unstable angina and subsequently underwent a triple coronary artery bypass operation and received two stents. Ratliff was also diagnosed with obesity, diabetes mellitus, and high cholesterol.

On August 5, 2002, Ratliff's cardiologist, Dr. David Hicks, found Ratliff to be stable and estimated that he should return to work in six months. On January 3, 2003, Ratliff's general practitioner, Dr. J. William Nuckolls, completed a form noting Ratliff's diagnoses and recommending that Ratliff diet, exercise, and decrease his stress. With respect to physical restrictions, Dr. Nuckolls stated that other than diet, exercise, and decreasing stress, "[t]here is nothing [Ratliff] should or should not do." Dr. Nuckolls further stated that Ratliff is capable of sitting, standing and walking eight hours out of an eight hour work day. Likewise, no restrictions were placed on the amount of weight that Ratliff was able to lift.

Three days later, Dr. Nuckolls drafted a letter wherein he stated that "Mr. Ratliff is not disabled." In the same letter, Dr. Nuckolls noted that Ratliff's schedule as a CPA was very stressful and that if he continued his current schedule then it was likely that Ratliff would have another, potentially fatal, coronary event within the next

[2]The late Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

several years. Dr. Nuckolls also noted that "if [Ratliff] were limited to forty hours [of work] per week, he would be able to better take care of himself, exercise, check his sugars, pay more attention to his diet, and have less stress." Lastly, Dr. Nuckolls's letter noted that Dr. Hicks placed no restrictions or limitations on Ratliff.

Partners at BKD are required to work 2700 hours per year or approximately fifty-two hours per week. Ratliff presented Dr. Nuckoll's recommendations to BKD and elected to limit his working hours to forty hours per week, or 2,080 hours per year. Because of the reduction in the number of hours worked by Ratliff, BKD terminated Ratliff as a partner. However, Ratliff continued to work for BKD as an employee accountant working forty hours per week. On January 16, 2003, following the termination of his partnership position, Ratliff submitted a claim for long term disability benefits with BKD's disability benefit insurer and claims administrator, Jefferson Pilot. Jefferson Pilot denied Ratliff's claim on April 25, 2003. Ratliff appealed to Jefferson Pilot's Appeals Council modifying his claim to one for partial disability benefits. This appeal was denied as to long term and partial disability benefits, and Ratliff filed suit in district court limiting his claim to partial disability benefits. The parties submitted a stipulated record and briefs. The district court dismissed Ratliff's complaint. From that ruling, Ratliff appeals.

II.

ERISA provides a plan beneficiary with the right to judicial review of a benefits determination. See 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where the plan expressly gives the administrator discretion to determine eligibility for benefits and to construe the terms of the plan, an abuse of discretion standard applies. Heaser v. Toro Co., 247 F.3d 826, 833 (8th Cir. 2001).

The district court determined that an abuse of discretion standard applies here. We review *de novo* the district court's determination of the standard of review in ERISA cases. Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 628 (8th Cir. 2007).

The parties agree that under the terms of the Plan, Jefferson Pilot had the authority to determine eligibility for benefits. However, Ratliff asserts that because Jefferson Pilot reviewed his medical records in interpreting the terms of the Plan, a *de novo* standard of review should apply. Ratliff analogizes Jefferson Pilot's review of Ratliff's medical records to a plan administrator's review of matters extraneous to the plan which triggers a *de novo* standard of review. See Hogan v. Raytheon Co., 302 F.3d 854 (8th Cir. 2002) (construction of divorce decree); Meyer v. Duluth Bldg. Trades Welfare Fund, 299 F.3d 686 (8th Cir. 2002) (construction of statute). We reject Ratliff's contention as we have repeatedly applied the abuse of discretion standard in cases involving the plan administrator's review of medical records. See Dillard's, Inc. v. Liberty Life Assur. Co. of Boston, 456 F.3d 894, 897-99 (8th Cir. 2006); McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924-925 (8th Cir. 2004); Shipley v. Ark. Blue Cross & Blue Shield, 333 F.3d 898, 900-02 (8th Cir. 2003); Coker v. Metro. Life Ins. Co., 281 F.3d 793, 797 (8th Cir. 2002). Thus, reviewing *de novo* the district court's determination of the appropriate standard of review, we find that the proper standard of review of the claims administrator's decision is abuse of discretion. See Rittenhouse, 476 F.3d at 628 (this court conducts *de novo* review of the district court's determination of the standard of review in ERISA cases).

Applying an abuse of discretion standard, the "administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision." Hillery v. Metro. Life Ins. Co., 453 F.3d 1087, 1090 (8th Cir. 2006) (quoting Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir. 1998). "A reasonable decision is one supported by substantial evidence, which is more than a scintilla but less than a

preponderance." Id. "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" McGee, 360 F.3d at 924 (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

As an alternative argument, Ratliff contends that the plan administrator, Jefferson Pilot, abused its discretion in denying his claim for partial disability benefits because he can no longer perform his occupation on a full-time basis.

The Plan defines "Partially Disabled or Partial Disability" as:

1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   (a) is unable to perform one or more of the material and substantial duties of his or her regular occupation, or is unable to perform such duties full-time; and
   (b) is engaged in Partial Disability Employment.

"Full-Time" is defined by the Plan as:

[T]he average number of hours the insured employee was regularly scheduled to work, at his or her regular occupation, during the month just prior to:
   1. The date the Elimination Period begins; or
   2. The date an approved leave of absence begins, if the Elimination Period begins while the Insured Employee is continuing coverage during a leave of absence.

"Main duties" or "material and substantial duties" are defined as:

[T]hose job duties which:
   1. are normally required to perform the Insured person's regular occupation; and
   2. cannot reasonably be modified or omitted.
It includes those main duties as performed in the general workforce; not as performed for a certain firm or at a certain work site.

"Partial Disability Employment" occurs when:

[T]he Insured Employee is working at his or her own or any other occupation; but because of a Partial Disability:
    1.   The Insured Employee's hours or production is reduced:
    2.   One or more main duties of the job are reassigned; or
    3.   The Insured Employee is working in a lower-paid occupation.
his or her current earnings must be at least 20% of Predisability income, and may not exceed the percentage specified in the Partial Disability Benefit section.

Ratliff argues that his situation fits squarely within the definition of "Partially Disabled" because due to his illness he is unable to perform one or more of the duties of his "Regular Occupation," partner-accountant at BKD, "Full-Time," that is 2700 hours per year as required of BKD's partners. Jefferson Pilot argues that Ratliff chose to reduce his hours in response to the suggestion of his physician that he adopt a healthier and less stressful lifestyle but that, as verified by his doctors, he is not disabled. Jefferson Pilot further asserts that Ratliff does not qualify for partial disability benefits because he maintains the ability to perform the "material and substantial duties" of his regular occupation as demonstrated by his continued performance of forty hours per week of work as a BKD accountant.

The plain language of the Plan provides that, in order to be found "Partially Disabled" the claimant must be "unable to perform one or more of the material and substantial duties of his or her regular occupation, or . . . unable to perform such duties full-time." In denying Ratliff's second appeal, Jefferson Pilot noted that Ratliff's medical records reflected no medical treatment after November 8, 2002, and adequately considered Dr. Nuckoll's statements that Ratliff is not disabled as well as the doctor's recommendations that Ratliff adopt a healthier lifestyle in order to "modify his risk factors." However, as cogently stated by the district court:

[a] person is not disabled based on what might happen in the future . . . [t]here was no medical event that triggered plaintiff's application for

LTD benefits; rather plaintiff was responding to his physician's advice to reduce his stress and other factors that put plaintiff at risk of another heart attack. Plaintiff voluntarily reduced his hours which caused his employer to terminate his position.

We cannot say that Jefferson Pilot abused its discretion in denying benefits. When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, "it should not be disturbed." Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180-81 (8th Cir. 2001). The discretionary decision of a plan administrator is not unreasonable merely because a "different, reasonable interpretation could have been made." Parkman v. Prudential Ins. Co. of Am., 439 F.3d 767, 773 (8th Cir. 2006)(per curiam)(citation omitted); Chronister v. Baptist Health, 442 F.3d 648, 654 (8th Cir. 2006) ("[T]he plan administrator's decision will be upheld if it was reasonable, that is, if it was supported by substantial evidence. If the decision satisfies this standard, it should not be disturbed even if another reasonable, but different, interpretation may be made.") (quoting McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1031 (8th Cir. 2000)).

Finally, Ratliff argues that Jefferson Pilot abused its discretion in that he was treated differently than a similarly situated BKD partner who was granted benefits due to her disability from Rocky Mountain Spotted Fever. The determination of the eligibility for benefits under a plan is an individualized matter with each claim to be considered on its own merits. Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1005 (8th Cir. 2004) (question of whether plan administrator has breached its obligations must be answered on a case-by-case basis) (citing Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 137-38 (3d Cir. 2000) ("The issue of liability itself requires an individualized inquiry into the equities of each claim.")). However, even if the circumstances of another former claimant were relevant to the determination of Ratliff's claim, the medical and other records with respect to the allegedly similarly situated BKD partner are not a part of the record in this case, and Ratliff concedes that he has no information as to the specifics of her condition. Absent such information, it is impossible to discern whether she was in fact similarly

situated to Ratliff and treated differently by Jefferson Pilot.  Therefore, we reject this argument.

## III.

Accordingly, we affirm the judgment of the district court.

---