City of New Castle Police Pension Plan v. Lepore

C.P. of Lawrence County, no. 1030 of 2009, C.A.

*James C. Conley,* for plaintiff.
*Sarah Andrews,* for defendant Donnette Lepore.
*James W. Manolis,* for defendant Antonio Lepore.

HODGE, *J.,* January 5, 2011—This case was before the court on August 24, 2010 for a hearing/argument regarding Donnette Lepore's and Antonio Lepore's entitlement to benefits from a pension plan established by the City of New Castle on behalf of the late Robert J. Lepore. This judge obtained jurisdiction over this case after the untimely death of the Honorable Senior Judge Charles R. Alexander. After a brief discussion with counsel for the defendants, this court agreed to proceed towards a resolution of the case as scheduled. All parties agreed that the court should enter an order after a review of the court transcript, the corresponding recording, including any briefs filed on behalf of the parties, and any and all applicable case and statutory law. This opinion timely follows.

At the time of his death, Robert was employed as a

police officer for the city of New Castle. During the course of his employment, Robert contributed to the City of New Castle Police Pension Plan, and made accumulated contributions totaling $34,566.05. On June 25, 2009 the City of New Castle Pension Plan filed a complaint for equitable interpleader, which named Donnette Lepore and Antonio Lepore as the defendants. The city filed the complaint in order to resolve Donnette's and Antonio's conflicting claims to the $34,566.05 in accumulated contributions.

Each defendant filed a statement of claim to the city's complaint. Donnette believes that she is entitled to a portion of the accumulated benefits as she and Robert were married for almost six years, during which time Robert made contributions to his pension plan. Specifically, Donnette and Robert were married on November 23, 1993. They were separated on July 27, 1999 and subsequently divorced on February 6, 2004. Antonio Lepore is Robert's natural brother. Antonio believes he is entitled to the $34,566.05 in its entirety as Robert executed a beneficiary designation form that named his brother, Antonio, as beneficiary of his pension after he and Donnette were separated.

Distribution of benefits evolving from the New Castle City Pension Plan (hereinafter "pension plan") is governed by the codified ordinances of the City of New Castle as defined in Article 169 titled Police Pension Plan. Any individual participating in the pension plan is required to contribute to the pension plan. These contributions will not be returned to the participant until

they have vested. Vesting occurs once an individual reaches the normal retirement age (designated here as 55 years old) and has served the city for at least 25 years. §169.06(c). In this case, Robert Lepore was 44 years old at the time of his death and had serviced as a city police officer for only 18 years. As such, the only available option for distribution of the accumulated benefits is an equal return of said benefits to a named beneficiary, as designed by the participant/employee, on the beneficiary designation form. §169.06(c); §169.01(a)(8).

Donnette's statement of claim to a specific portion of the accumulated benefits is based on the fact that prior to Robert's untimely death, on July 28, 2008, he and Donnette were involved in ongoing divorce proceedings. By order of court dated September 16, 2004, the court address how the marital component of Robert's pension plan was to be divided.

That order of court specifically provided:

The marital component of the plaintiff's City of New Castle Police Pension should be distributed between the parties equally and the distribution of this pension should be deferred so that the defendant shall receive 50 percent of the marital portion of the accrued monthly marital benefit as of the date of the separation. Likewise, the plaintiff should receive 50 percent of the marital portion of the accrued monthly marital benefit as of the date of the separation.

The plaintiff shall, at his expense retain separate counsel, or an individual with sufficient expertise, to

prepare an appropriate Qualified Domestic Relations order in order to effectuate this transfer...

However, no qualified domestic relations order was ever prepared by Robert or entered by either party. Yet, Donnette asserts that this fact alone does not preclude her from curing the error by entering a subsequent QDRO, even after the death of the payor spouse, as the court order of September 16, 2004 was in effect prior to Robert's death. In support of her argument, Donnette cites numerous cases from federal courts located outside of the third circuit, holding that the Employee Retirement Income Security Act (ERISA) does not preclude a payee spouse from "perfect[ing] the DRO by qualifying it after the death [of the payor spouse]." *Statement of claim* filed on behalf of Donnette Lepore, pp. 3.

Although the case law cited by counsel for Donnette is not binding on these proceedings, this court is willing to make further inquiry for the purposes of guidance and persuasion. In the case of *Hogan v. Raytheon*, 302 F.3d 854 (8th Cir. 2002), a former spouse of a deceased employee brought an action against the deceased spouse's employer, alleging that she was entitled to receive surviving spouse benefits under the employee's Employee Retirement Income Security Act (ERISA) plan, pursuant to their divorce decree. *Id.* at 855. The district court entered summary judgment in favor of former spouse, and the deceased spouse's employer appealed. *Id.* The appeals court determined that the domestic relations order was in fact a valid qualified domestic relations order (QDRO) under ERISA, and the former spouse was not precluded

from obtaining surviving spouse benefits regardless of the fact that the employee spouse died prior to a final domestic relations order being entered. *Id.* at 857.

However, this case is factually different than those cited by Donnette. The primary difference is that the Employee Retirement Income Security Act does not apply in this case as the pension plan is a governmental plan, see 29 U.S.C.A. 1003(b)(i). Additionally, the court finds that the issue of distributing the available benefits from Robert's pension is not based on whether or not a subsequent QDRO may be entered. The order of court dated September 16, 2004 adequately addresses how the marital component of the pension plan should be distributed, and this court relies on that specific order for guidance in determining an appropriate resolution to this case.

The September 16, 2004 order awarded Donnette a deferred distribution of 50 percent of the marital portion of the accrued monthly marital benefit of Robert Lepore's pension plan as of the date of the separation. Requiring the distribution to be deferred when there are insufficient marital assets to effectuate an immediate offset distribution of pension benefits is common practice by courts when determining an equitable resolution to economic claims. See e.g.; *Brown v. Brown,* 547 Pa. 360, 690 A.2d 700 (Pa. 1997); *Berrington v. Berrington,* 534 Pa. 393, 633 A.2d 589 (Pa. 1993); *Elhajj v. Elhajj,* 605 A.2d 1268 (Pa.Super. 1993). However, due to Robert's untimely death, his pension plan cannot be deferred and is subject to a simple return of all accumulated contributions made thereto.

In her statement of claim, Donnette asserts that in lieu of the September 16, 2004 order, she expected to receive the equivalent of $11,360.00 from Robert's pension plan as part of the parties' property settlement agreement. Donnette supports this assertion by arguing that the September 16, 2004 order considered the totality of the economic circumstances of the party and because there is sufficient assets in the accumulated benefits contributed to Robert's pension plan, she should be awarded the anticipated amount of $11,360.00. However, this court finds this argument to be without merit, as the September 16, 2004 order did not consider the fact that Robert's pension plan would not vest due to his untimely death and result in severe forfeiture of accumulated assets. Donnette's expectation of $11,360.00 in deferred distributions is just that: a mere expectancy contingent on the fact that the accumulated contributions made by Robert to the pension plan from the date of marriage to the date of separation would in fact vest. However, this condition failed to occur, and the only available distribution is an equal return of the contributions made to the pension plan. As such the court rejects Donnette's argument that she is entitled to the expected deferred value of one half of the martial portion of the accrued monthly marital benefit as of the date of the separation.

The court next considered the evidence presented at the August 24, 2010 hearing in the form of testimony elicited from Joshua Letore, a finance clerk for the City of New Castle's Financial Department, that during the course of Robert and Donnette's marriage, Robert contributed

a total of $9,399.58 to the pension plan. Counsel for Donnette did not attempt to refute this fact, and instead argued that the court should consider the total length of Robert and Donnette's marriage to calculate a coverture fraction by which the marital component of Robert's pension should be calculated. In support of her argument, counsel for Donnette offers the case of *Smith v. Smith*, 595 Pa. 80, 938 A.2d 246 (Pa. 2007). In *Smith*, the former wife wanted to share in an increased pension benefit, which her ex-husband obtained after their separation when the Pennsylvania legislature created a new class of benefits. 938 A.2d at 251. The trial court held that the increase was not due to post-separation efforts or contributions of husband and, thus, was marital property and subject to equitable distribution. On appeal, the Superior Court reversed the trial court's determination and found that the pension increase was a result of husband's increased contributions and was not marital property subject to equitable distribution. *Id.* Wife petitioned the Pennsylvania Supreme Court for allowance of appeal. The Supreme Court held that: 1) courts should allocate defined benefit pension between its marital and nonmarital portions solely by use of a coverture fraction; 2) portion of post-separation enhancement of pension derived from employment after husband's election of a new class of pension benefits, which was attributable to an increase in payroll deduction, was husband's nonmarital property, but the value of the pension that would have resulted naturally from husband's continued employment was marital property; and 3) post-separation enhancement of pension accrued prior to effective date of husband's election was marital

property.

The *Smith* court's decision established very specific methods for equitably distributing pension plan benefits, consistent with the Pennsylvania legislature's newly added provisions to the Pennsylvania Divorce Code, § 3501(c). However, the *Smith* court's holding that enhancements to pension benefits, arising after separation, are generally included in marital property, also specifically excluded enhancements to the pension arising from post-separation monetary contributions made by the employee spouse. *Smith*, 595 A.2d at 259; 23 Pa.C.S. §3501(c). Thus, while any post-separation increases in the pension plan due to the legislature creating a new class of pension benefits were attributable as marital property, any increases that were a result of husband's post-separation monetary contributions were not. *Id.* at 261.

In the case *sub judice*, Donnette's argument that this court should consider the total length of Robert and Donnette's marriage to calculate a coverture fraction by which the marital component of Robert's pension should be calculated must fail after a thorough review of the controlling case law set forth in the *Smith* case. Any contributions made to Robert's pension plan after the date of separation would be a result of husband's own monetary contributions and are therefore not marital property. As such, this court accepts the testimony of Jashua Letore that the total amount contributed by Robert to the pension plan from the date of marriage until the date of separation equals $9,399.58. The sum of $9,399.58 shall equal the marital component of Robert's pension plan for the

purposes of equitable distribution.

This court does, however, accept Donnette's argument that she is entitled to one half of the marital component of Robert's pension plan, which he established from the date of their marriage to the date of their separation. *Statement of claim*, filed on behalf of Donnette Lepore, pp. 4. The September 16, 2004 order clearly sought to divide the marital portion of the pension plan in halves with Donnette and Robert each being awarded an equal amount. Although the case law cited by Donnette in support of her argument that subsequent steps can be taken in order to qualify a domestic relations order for the purposes of enforcing a prior order of court are not binding, and with the court previously noting that the Employee Retirement Income Security Act and the Pension Plan Act of 2006 do not apply in this case as the pension plan is a governmental plan, see 29 U.S.C.A. 1003(b)(i), the court is not precluded from honoring the intention and the directive of the September 16, 2004 order.

As such the court finds that Donnette shall be awarded the sum of $4,699.79, being one half of the $9,399.58 contributed by Robert to the pension plan from the date of his marriage to Donnette through the date of their separation. Antonio as the named beneficiary shall be awarded the balance of the accumulated benefits in the sum of $29,866.26 ($34,566.05 less the $4,699.79 awarded to Donnette).

## ORDER OF COURT

And now, January 5, 2011, this case being before

the court for a hearing/argument on August 24, 2010, regarding Donnette Lepore's and Antonio Lepore's entitlement to benefits from a pension plan established by the City of New Castle on behalf of the late Robert J. Lepore, and with Donnette Lepore being represented by Sarah Andrews, Esquire and Stephanie Reiss, Esquire from the law firm of Morgan, Lewis & Bockius, and with Antonio Lepore being represented by James Manolis, Esquire, and the court having made a thorough review of all testimony presented as well as the corresponding record, it is hereby ordered and decreed as follows:

1. The prothonotary of Lawrence County shall distribute the $34,566.05 in accumulated contributions from the New Castle Police Pension Plan resulting from said contributions being made by Robert J. Lepore in the following manner:

a. Donnette Lepore shall receive a sum of $4,699.79.

b. Antonio Lepore shall receive the balance of the accumulated benefits in the sum of $29,866.26.

2. Donnette Lepore and Antonio Lepore shall each receive an allocable share, 13.60 percent to Donnette Lepore and 86.40 percent to Antonio Lepore, of any interest earned on the accumulated contributions while said contributions were deposited with the prothonotary of Lawrence County.

3. The prothonotary shall properly service notice of this order and opinion upon counsel of record for the parties.