# Fedorko v. Fedorko

*David Reiss,* for plaintiff.
*Daniel Webster,* for defendant.

SOLOMON, *J.,* May 14, 2008—Presently before the court are exceptions to the special master's report, filed

by both the plaintiff, Beatrice Fedorko, and the defendant, Michael Fedorko. Each party presented oral arguments and submitted briefs to the court.

## STATEMENT OF THE CASE

The plaintiff, Beatrice G. Fedorko, and the defendant, Michael R. Fedorko, were married on January 4, 1969. (Special master's report, filed 08/06/07, at 2.) The marriage was the first for both parties, and they had one child, Ashley Whitney Fedorko, born June 14, 1984. *Id.* Presently, the plaintiff is 64 years old, being born on August 19, 1943, and the defendant is 62 years old, being born on August 24, 1945. *Id.*

The plaintiff obtained a high school diploma and, throughout the marriage, was primarily a homemaker and a stay-at-home mother. *Id.* at 4. For a short time period in 1998, the plaintiff worked part-time, stacking magazines. *Id.* The defendant graduated high school and obtained an engineering degree from West Virginia University. *Id.* He has been employed by Bechtel Bettis Inc., formerly Westinghouse Electric Corporation, since 1969. *Id.* The special master found that the defendant was in good health and that the plaintiff was in fair health, having carpal tunnel syndrome, short-term memory problems, and depression. *Id.* at 3. Presently, the defendant is residing in the marital residence and the plaintiff rents an apartment. *Id.* at 6.

After hearing, the special master, John M. Zeglen, Esquire, made recommendations for the equitable distribution of the parties' marital assets and for alimony. Under the master's equitable distribution scheme, it was

recommended that the plaintiff receive an investment account, valued at $45,714.84, and 50 percent of another investment account, valued at $123,250. *Id.* at 14. As to the defendant, the master recommended that he retain the marital home, which had an equity value of $153,557.55. *Id.* at 15. It was also recommended, among other things, that the husband be awarded a Metropolitan life insurance policy with no cash value and a Bechtel term life insurance policy with a $50,000 cash value. *Id.* The special master further recommended that each party receive a 50 percent share of the defendant's pension from Bechtel Bettis Inc., when payments begin. *Id.* at 14, 16.

In addition to considering the length of the marriage, the age of the parties, and the earning capacities of both parties, the special master took into account several other factors in equitable distribution. He was aware that there were potential tax ramifications related to the marital assets, which he estimated could reduce the value of some assets by 25 percent. *Id.* at 7. Also, the master acknowledged that neither party contributed significantly to the education and training of the other party. *Id.* Further, the special master was aware that the defendant was primarily responsible for acquiring and maintaining most of the marital assets. *Id.* at 6.

Furthermore, the special master made a recommendation that the defendant make alimony payments to the plaintiff. In making this recommendation, the special master was aware that the defendant's income can increase based upon performance, and had increased every year since 1995. *Id.* at 11. Also, the master was aware

that the plaintiff had some employment history, *id.* at 4, but essentially is "unable to meet her daily needs and expenses without the receipt of alimony." *Id.* at 12. Another factor taken into consideration was that the defendant's extramarital affair was a major factor in the breakdown of the marriage. *Id.*

For the purposes of alimony, the special master recommended that the defendant pay the greater of $2,058, or 40 percent of the difference between the defendant's net monthly income and $700, excluding pension benefits. *Id.* at 19. The master also recommended a reduction in alimony, dollar for dollar, for each dollar the plaintiff receives via her Social Security retirement benefits. *Id.* Moreover, if the defendant is not employed, and only receives passive income, the defendant's obligation for alimony payments shall be reduced to 40 percent of the difference between the defendant's Social Security retirement benefits and the amount of Social Security retirement benefits the plaintiff is receiving or could receive. *Id.* Additionally, it was recommended that the defendant provide health insurance for the plaintiff until she receives Medicare. *Id.*

Finally, in making his determination that the defendant pay all counsel fees, the special master considered the financial condition of the parties, the factors relevant to equitable distribution, and the facts considered on the issue of alimony. *Id.* at 14. Specifically, the special master had knowledge of the defendant's significantly higher earning potential, *id.* at 4, the defendant's recommended share in equitable distribution, which includes the marital residence, *id.* at 15, and the fact that the

plaintiff is unable to meet her daily needs without the receipt of alimony. *Id.* at 12.

## DISCUSSION

The following exceptions were submitted by the plaintiff to the special master's report:

"(1) Pertaining to the issue of equitable distribution, the plaintiff files the following exceptions:

"(a) The master failed to equitably divide the marital estate by awarding only 48.7 percent of the marital estate to the plaintiff.

"(b) In light of the enumerated factors set forth in 23 Pa.C.S. §3502(a)(1-11), as they apply to the facts of the within case, the master erred in failing to award 65 percent of the marital estate to the plaintiff.

"(c) The master erred in failing to take into consideration the federal, state and local tax ramifications associated with each asset to be divided, distributed or assigned pursuant to 23 Pa.C.S. §3502(a)(10.1), especially the income tax ramification to be borne by the plaintiff associated with the receipt of funds from Fidelity Investment account no. ********* and 50 percent of Fidelity Investments Bechtel NR Program Savings Plan.

"(d) The master erred in failing to recommend that the defendant name the plaintiff as the sole irrevocable beneficiary of his Bechtel term life insurance policy with a $50,000 face value and Metropolitan life insurance policy no. *****, with the defendant being required to pay any and all premiums, fees and costs associated with maintaining said policies during his lifetime.

"(2) Pertaining to the special master's recommendation of alimony, the plaintiff makes the following exceptions:

"(a) The master erred in finding that the defendant's monthly net income was $5,847 for purposes of calculating his alimony payments, as said income represents defendant's income as of August 12, 2002, which is approximately five years prior to the date of the special master's report.

"(b) The master erred in failing to calculate the defendant's income by using current monthly net income from employment at Betchel Bettis Inc., as set forth in his 2006 Federal Income Tax Return, previously submitted to the master.

"(c) The master erred in failing to find that the defendant's monthly net income for the purposes of determining his alimony obligation was $6,285.39.

"(d) The master erred in failing to conclude that in light of the plaintiff's prior work history, earning capacity and current health condition, no income should be attributed to her for the purposes of calculating her monthly net income.

"(e) The master erred in failing to conclude that the defendant must pay a minimum of $2,524.12 or 40 percent of the difference between defendant's monthly net income, excluding pension benefits, whichever is greater, as monthly alimony to plaintiff, until plaintiff receives Social Security retirement benefits."

In his exceptions to the report of the special master, the defendant contends:

"(1) That the master erred in concluding that if the plaintiff did not survive to receive her 50 percent share of payments from the defendant's Bechtel Bettis Inc. pension plan, then the benefit could go to a beneficiary named by the plaintiff in accordance with the plan.

"(2) That the master erred in recommending that the defendant have an obligation to provide COBRA benefits for the plaintiff until she receives Medicare.

"(3) That the master erred in recommending that the triggering event for a reduction in the obligation in alimony payments should be when the plaintiff receives Social Security retirement benefits.

"(4) That the master erred in requiring that in the event the defendant retires and receives Social Security benefits, the defendant is obligated to pay alimony in the amount of 40 percent of the difference between the defendant's and the plaintiff's monthly Social Security amount.

"(5) The master erred in recommending that the defendant pay all of plaintiff's legal counsel fees related to the divorce proceeding.

"(6) That there is a typographical error in the special master's report in section XIV, paragraph 11. Here, the report states that the defendant will receive a monthly pension benefit upon retirement of $44,647 per month, while in fact the correct amount is $4,647.02.

"(7) That the master committed a factual error at Item II, F. Here, the master found that the defendant agreed to pay the counsel fees of the plaintiff Wife."

The provisions of the Divorce Code for alimony and equitable distribution provide the trial court with flexibil-

ity in resolving the economic fate of the parties upon divorce. *Hess v. Hess,* 327 Pa. Super. 279, 284, 475 A.2d 796, 799 (1984). The factors that are relevant in making a decision as to equitable distribution are enumerated in the Divorce Code under 23 Pa.C.S. §3502(a), and the factors relevant for determining alimony are enumerated under 23 Pa.C.S. §3701(b). Moreover, equitable distribution does not presume an equal division of marital property, and the goal of economic justice will often dictate otherwise. *Mercatell v. Mercatell,* 854 A.2d 609, 612 (Pa. Super. 2004). Further, as a matter of law, although this court is not bound by the special master's findings, a special master's report is entitled to great consideration. *Naddeo v. Naddeo,* 426 Pa. Super. 131, 142, 626 A.2d 608, 614 (1993).

Initially, the plaintiff submits an exception to the special master's recommendation regarding equitable distribution. The plaintiff contends that the master failed to adequately take into account the tax ramifications of the assets awarded to the plaintiff. Specifically, the plaintiff argues that she would incur significant tax liability in liquidating her interests in two of the retirement investment accounts.

Under the Divorce Code, included in the factors relevant to equitable distribution, are the tax ramifications associated with each asset, each party's contribution to the education and training of the other party, and the contribution of each party to the acquisition and preservation of marital property during the marriage. 23 Pa.C.S. §3502(a). Upon review of the special master's recommendation, it is clear that the master was fully aware of

the possibility of a 25 percent reduction in value of the two retirement accounts due to tax ramifications. Additionally, the special master found that neither party contributed to the education and training of the other party, and that the defendant primarily contributed to the acquisition and preservation of marital property during the marriage. Since the special master's recommendations on equitable distribution were based on relevant factors, in accordance with the Divorce Code, this court finds no reason to grant the plaintiff's exception regarding the percentage of marital assets awarded in equitable distribution.

The plaintiff next submits an exception on the grounds that it was in error to distribute two life insurance policies to the defendant. The plaintiff argues that because she is substantially dependent upon the defendant as a source of income, it would be equitable to make her the sole beneficiary of both life insurance polices to financially protect her. This court notes that, under the Divorce Code, "[w]here it is necessary to protect the interests of a party, the court may also direct the purchase of, and beneficiary designations on, a policy insuring the life or health of either party." 23 Pa.C.S. §3502(d). Therefore, it would properly be within this court's discretion to order a change in the beneficiary of the life insurance policies. However, in the present case, this court does not find any reason to disturb the recommendation of the special master. The special master was aware of the value of these life insurance policies, and gave consideration to the relevant factors of 23 Pa.C.S. §3502(d), including the tax ramifications associated with each asset, each party's contribution to the education and training

of the other party, and the contribution of each party to the acquisition and preservation of marital property during the marriage. Since this court gives great consideration to the findings of the special master, this court will not modify the distribution of the two life insurance policies.

The plaintiff also takes exception to the special master's report on the grounds that it was error to base the monthly award of alimony, in the amount of $2,058, on the 2002 salary of the defendant. It is her contention that the defendant's monthly salary has continually increased since that calculation was made, and a more recent base for the monthly alimony payment is necessary. Upon considering the special master's report, this court does not find it necessary to adjust the monthly alimony amount. The special master's findings indicate that he was aware that the defendant's income had a pattern of increasing and would likely increase in the future. Consequently, the special master recommended an alternative method to calculate the defendant's alimony payments in the event of an increase. According to the recommendation, the defendant should pay the greater of $2,058 monthly, or 40 percent of the difference between the defendant's monthly net income, excluding pension benefits, and $700. Therefore, this court finds no error in the special master's recommendation.

Also, concerning alimony, the plaintiff submits an exception to the special master's recommendation challenging the finding that plaintiff's monthly income capacity is $700. The plaintiff submits that because of her

health problems, age and lack of a significant employment background, it would be equitable to reduce her monthly earning capacity to $0. In regard to health problems, the master found that the plaintiff suffered from some physical and mental afflictions, but overall was in fair health. Also, although the special master found that the plaintiff was incapable of supporting herself, he was aware that she once was employed stacking magazines. Given these findings, it appears that the special master gave consideration to the plaintiff's limitations in obtaining employment to support herself, but found these limitations were not such that she had no earning capacity. Therefore, the plaintiff's exception concerning the plaintiff's earning capacity is denied.

Turning to the defendant, he raises an exception claiming that it was error for the special master to find that the plaintiff's 50 percent share of the defendant's monthly pension plan payment could go to a designated beneficiary in the event of the plaintiff predeceasing payment. Retirement pension benefits, vested or non-vested, are marital property subject to equitable distribution. *Brown v. Brown,* 447 Pa. Super. 424, 430, 669 A.2d 969, 972 (1995). In the present case, this court believes that because of the efforts of the defendant in acquiring and maintaining the pension benefits, due to his employment at Bechtel Bettis, it is equitable to place a limit on the person who may be eligible to receive a 50 percent share of the pension benefit should the plaintiff predecease payment. Therefore, this court finds it necessary to limit the beneficiary of the plaintiff's share to only the issue, and his heirs, of the marriage between the plaintiff and the defendant. This will avoid the occurrence of

having a third party, who has no relation to the marriage of the two parties, from obtaining a significant benefit that was primarily acquired and maintained during the parties' marriage. In the event that the plaintiff and the defendant have no surviving issue, then the recommendation of the master shall be followed.

The next two exceptions presented by the defendant concern the reduction in defendant's obligations to pay alimony and provide health insurance when the plaintiff starts receiving Social Security retirement benefits and Medicare. The defendant contends that the triggering event for both of these reductions should be when the plaintiff becomes eligible for Social Security retirement benefits and Medicare. In recommending the award of alimony, the special master considered several factors pursuant to 23 Pa.C.S. §3701(b), including the relative needs of the parties, the capability of each party of self-support, and the marital misconduct of the parties. The findings of the special master demonstrate that the master took into consideration the fact that the plaintiff was primarily dependent on the defendant and needed alimony to meet her daily living expenses, health care needs and retirement needs. Further, on the issue of marital misconduct, the special master found that the defendant admitted to having an affair which eventually drove the plaintiff away from the marriage. Since the special master's recommendations were based on well-reasoned considerations, which are relevant to the issue of alimony pursuant to the Divorce Code, the defendant's exceptions regarding the triggering events for reduction in alimony are denied.

The defendant's next exception argues that the special master erred in recommending that upon his retirement and receipt of Social Security retirement benefits, he would still be required to pay monthly alimony in the amount of 40 percent of the difference between the defendant's Social Security benefits and the amount of Social Security benefits to which the plaintiff is, or would be, eligible. His contention is that, in light of the significant pension benefit awarded in equitable distribution to the plaintiff, and which the plaintiff should receive upon his retirement, it will become unnecessary for the defendant to continue making alimony payments to the plaintiff. However, as previously discussed, the special master took into account many factors in making his recommendation of alimony, including the relative needs of the parties, the capability of each party of self-support, and the marital misconduct of the parties. Consequently, this court finds it unnecessary to alter the special master's recommendations regarding a reduction in alimony.

Additionally, the defendant takes exception to the special master's recommendation that the defendant pay all counsel fees incurred by the plaintiff. The defendant submits that, given the amount received by the plaintiff in equitable distribution, she is in a financial position to afford her own counsel fees. The purpose of awarding counsel fees in a divorce proceeding is to "enable the dependent spouse to maintain the action without being placed at a financial disadvantage." *Harasym v. Harasym,* 418 Pa. Super. 486, 496, 614 A.2d 742, 747 (1992). Considering that the special master found the defendant to have a significantly higher earning potential, he recommended that a significant amount of assets be distrib-

uted to the defendant, including the marital residence, and found that the plaintiff is unable to meet her daily needs without the receipt of alimony, this court finds sufficient facts to draw the conclusion that the plaintiff was at a financial disadvantage. Therefore, this court concurs with the special master in awarding counsel fees to the plaintiff. Consequently, the exception must be denied.

Lastly, the defendant has two exceptions to factual findings of the special master's report. First, the defendant points out that in section XIV, paragraph 11, it is stated that the defendant's monthly income is $44,647.02. This court is of the opinion that this was a typographical error, and will grant the exception to allow the income to be changed to $4,647.02. The second exception of the defendant to the master's determination, based on the plaintiff's testimony, is that the defendant agreed to pay counsel fees of the plaintiff. In general, particular consideration should be given by a trial court towards the special master on issues of credibility. *McBride v. McBride,* 335 Pa. Super. 296, 298, 484 A.2d 141, 142 (1984). As the special master was in the best position to assess the credibility of each witness, this court will uphold the fact-finding of the special master on this issue.

Wherefore, we will enter the following order.

## ORDER

And now, May 14, 2008, it is hereby ordered and decreed that the exception of the plaintiff to the special master's report as to the share of marital property the

plaintiff is entitled to under equitable distribution; the exception of the plaintiff as to the award of two life insurance policies to the defendant; the exception of the plaintiff as to the special master's calculation of the defendant's monthly alimony payments; and the exception of the plaintiff to the special master's finding of income attributable to the plaintiff for the purpose of calculating alimony are denied.

Further, it is hereby ordered and decreed that the exception of the defendant to the special master's report as to the option of the plaintiff to name a beneficiary for her share of the pension benefit of the defendant, in the event she predeceases its payment, is denied, except that it is ordered that only the issue of the marriage between the plaintiff and the defendant be permitted as a beneficiary. In the event that there is no surviving issue, then the recommendation of the master shall be followed.

Still further, the exception of the defendant as to the triggering event for reductions in the obligation of the defendant for alimony and to provide health insurance for the plaintiff; the exception of the defendant as to his alimony obligations after his retirement and receipt of Social Security retirement benefits; and the exception of the defendant as to the recommendation that the defendant pay the plaintiff's attorney's fees are denied.

Still further, the exception of the defendant to the special master's report finding on the expected monthly pension benefit of the defendant is granted; and, therefore, and it is ordered that the expected monthly pension amount in section XIV, paragraph 11 is $4,647.02.

Still further, the exception of the defendant to the special master's factual finding that the defendant agreed to pay the plaintiff's counsel fees is denied.